IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICARDO MARINEZ,

    Petitioner,

v.

WILLIAM POLLARD, Warden,
Waupun Correctional Institution,

    Respondent.

OPINION AND ORDER

11-cv-802-wmc

---

Petitioner Ricardo Marinez seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging the validity of a state court conviction. After conducting a preliminary review of the petition, this court directed respondent to show cause why relief should not be granted. The respondent filed an answer, along with records from the relevant state court proceedings, and both parties subsequently submitted briefing. Because Marinez is not entitled to the relief sought, his petition will now be denied.

BACKGROUND

Marinez was charged with three separate counts of repeated, first-degree sexual assault of a child in Jefferson County Case No. 2007CF205. The state court of appeals summarized the evidence and arguments presented at trial as follows:

> In May 2007, the State charged Marinez with sexually assaulting his children, A.E.M. and A.T.M., and his stepchild, K.L.A. Prior to trial, the State filed a notice of intent to introduce evidence that Marinez fled from police on the night of the arrest, leading police on a high-speed car chase

and then fleeing on foot, and that he was apprehended with apparently self-inflicted stab wounds in his abdomen. Marinez objected to admission of the evidence, and the circuit court initially held that the evidence was not admissible. On the first day of trial, the State again moved to introduce the flight evidence. In support, it alleged that police interviewed members of the Marinez household between 4:00 p.m. and 8:30 p.m. on May 18, 2007, and made contact with Marinez's mother at Marinez's residence at approximately 7:30 that evening. The State also asserted that Marinez explained his subsequent flight by stating that he ran from police because he "[had] warrants." The State argued that, because Marinez had no warrants out for his arrest, this statement implied that Marinez knew there was a pending sexual assault investigation against him. Marinez again objected to admission of the flight evidence. The circuit court found that the flight evidence was admissible to establish Marinez's consciousness of guilt.

The State's evidence at trial included in-court testimony by all three of the minor victims; previously videotaped interviews of the children by a forensic interviewer; evidence that one of the victims, Marinez's five-year-old stepdaughter, had tested positive for chlamydia; evidence that Marinez was tested twice for chlamydia, first testing positive and then, with a more accurate method, testing negative; and the details of Marinez's flight from police before his arrest.

Marinez testified in his own defense, stating that he had never sexually assaulted any of the children. He stated that he was tested for chlamydia, but to his knowledge he never received a positive result. He also explained that his flight from police was prompted by his belief that he could be arrested for a previous unpaid traffic ticket, and that he injured himself when he ran into a barbed-wire fence.

The State asserted in its closing argument that the primary evidence in the case was the children's testimony. The State asserted that other supporting evidence included the chlamydia evidence and the flight evidence. Marinez's counsel argued that the State had not proved that the assaults had occurred. Counsel specifically highlighted the lack of any physical evidence, which he contended necessarily would have been present based on the children's allegations of both vaginal and anal penetration at very young ages. He also argued that the flight evidence did not support an inference of guilt in this case, and that the more reliable evidence indicated that Marinez did not have chlamydia. The State argued in rebuttal that the facts indicated that Marinez ran from the police and stabbed himself based

> on his guilt in this case, and the fact that the five-year-old victim had chlamydia was physical evidence that she had been sexually assaulted. . . . .

*State v. Marinez*, 2010 WI App 159, ¶¶ 2-5, 330 Wis. 2d 498, 792 N.W.2d 240 (unpublished).

A jury found Marinez guilty as charged on all three counts of repeated, first-degree sexual assault.[1] The circuit court sentenced him to serve sixty years in prison followed by a thirty-year term of extended supervision. After sentence was imposed, Marinez filed a motion for post-conviction relief,

> arguing that he was denied his right to the effective assistance of counsel at trial because his attorney was ineffective for failing to introduce any evidence that Marinez's brother, Alexander Marinez,[] was a possible source of the five-year-old victim's chlamydia infection.[] The circuit court held a *Machner*[] hearing on the motion. At the hearing, Marinez's trial counsel testified that the defense he pursued at trial was that Marinez did not do the acts the State accused him of doing, and that the State could not prove that he did. Counsel stated that he was aware at the time of trial that Alexander had also been charged with sexually assaulting the same minor victims. Counsel also agreed that it was likely that Marinez had informed him that Alexander had taken antibiotics during the relevant time period, which is the normal treatment for chlamydia, although counsel did not specifically remember. Counsel stated that he checked Alexander's court file and spoke with Alexander's attorney looking for any indication that Alexander had chlamydia, and discovered none. Counsel stated that he made no effort to introduce any evidence that Alexander may have been the source of the victim's chlamydia infection.

*Marinez*, 2010 WI App 159, ¶ 6 (footnotes omitted).

---

[1] Marinez was charged separately with fleeing an officer in Jefferson County Case No. 2007CF200. He pled guilty in that case in exchange for a two-year prison sentence.

The circuit court ultimately found that defense counsel's trial strategy was reasonable under the circumstances and denied the postconviction motion in a written order. *See State v. Marinez*, 2007CF205 (Oct. 7, 2009).

On direct appeal, Marinez challenged both his conviction and the circuit court's ruling on his motion for postconviction relief. In particular, Marinez argued that: (1) his trial attorney was ineffective for failing to introduce any alternative theory as to how one of the three minor victims contracted chlamydia; and (2) the circuit court erred in allowing evidence that Marinez fled from police on the night of his arrest. The Wisconsin Court of Appeals rejected those arguments and affirmed the conviction in an unpublished opinion. *See State v. Marinez*, 2010 WI App 159, 330 Wis. 2d 498, 792 N.W.2d 240 (unpublished). The Wisconsin Supreme Court summarily denied his petition for further review. *See State v. Marinez*, 2011 WI 15, 331 Wis. 2d 47, 794 N.W.2d 901 (Jan. 11, 2011) (unpublished).

Marinez now seeks relief from his conviction in Jefferson County Case No. 2007CF205 pursuant to 28 U.S.C. § 2254. He raises three claims. First, Marinez argues that the trial court erred by allowing the state to introduce evidence of his flight from police and his self-inflicted wounds as consciousness of guilt. Second, Marinez contends that he was denied effective assistance of counsel because his defense attorney failed to argue that Marinez's brother committed the sexual assaults. Third, Marinez maintains that his defense counsel was ineffective because he was unprepared for trial. For the reasons set forth below, the court finds that: the first and second grounds are supported

by the state court record, especially under the highly deferential standard for habeas review; and the third ground was defaulted away by Marinez's failure to raise it before the state courts.

## OPINION

I.  **Habeas Corpus Review**

The first two grounds for relief raised by Marinez were adjudicated in Wisconsin Circuit Court and the Court of Appeals, as well as summarily denied by the Wisconsin Supreme Court. When a state system issues multiple decisions, a federal habeas corpus court typically considers "the last reasoned opinion on the claim." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Woolley v. Rednour*, 702 F.3d 411, 421 (7th Cir. 2012) (unless a state court adopts or incorporates the reasoning of a prior opinion, 28 U.S.C. § 2254 requires federal courts to review one state decision) (citation omitted). To the extent that the Wisconsin Court of Appeals addressed grounds one and two on the merits, Marinez must show that its adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The standard outlined in § 2254(d)(1) is exacting and "highly deferential," *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 15 (2013), demanding that state courts be given "the benefit of the doubt." *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786 (2011). To prevail, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87. A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *See Brown v. Payton*, 544 U.S. 133, 141 (2005). In addition to the "formidable barrier" posed by this standard, *Titlow*, 134 S. Ct. at 16, the petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### A. Evidentiary Rulings

Marinez contends that he is entitled to relief from his conviction because the circuit court erred by admitting evidence showing that he fled from the police to avoid arrest. The Wisconsin Court of Appeals found that the circuit court properly exercised its discretion in admitting the evidence because it was both probative of guilt and not unduly prejudicial.

> Marinez next contends that the circuit court erroneously exercised its discretion in admitting evidence of his flight from police on the night of his arrest. He contends that there was an insufficient link between his flight and the charges in this case to establish that his flight showed his consciousness of guilt. *See Quiroz,* 320 Wis.2d 706, ¶ 18, 772 N.W.2d 710

(evidence of flight is generally admissible as probative of guilt). Alternatively, Marinez contends that, even if the flight evidence was relevant, it was unduly prejudicial. *See State v. Miller*, 231 Wis.2d 447, 460-62, 605 N.W.2d 567 (Ct. App. 1999). The State responds that the record supports the circuit court's exercise of discretion to admit the flight evidence as probative of Marinez's guilt.

The State offered the following in support of admitting the flight evidence: before his arrest, Marinez resided with his wife and the three minor victims in this case; police interviewed Marinez's wife and the minor victims between approximately 4:00 p.m. and 8:30 p.m. on May 18, 2007; police went to Marinez's residence to arrest Marinez at approximately 7:30 p.m., and spoke with Marinez's mother, who stated that she did not know where Marinez was; at 1:54 a.m. on May 19, 2007, Marinez led police on a high-speed car chase, crashed his car, and then fled on foot; Marinez was apprehended with wounds in his abdomen that he said resulted from running into a barbed-wire fence, but that treating physicians indicated were consistent with stab wounds from a sharp instrument, such as a knife; and Marinez explained that he ran because he had "warrants," although police records indicated he did not have any outstanding warrants for his arrest. The circuit court admitted the flight evidence as probative of Marinez's guilt, finding that there was sufficient evidence that Marinez fled from police because he anticipated being apprehended for the charges in this case. The court also found that the evidence was not unduly prejudicial. We conclude that the circuit court properly exercised its discretion. The facts presented by the State, including the police interviews with Marinez's family and the details of the chase and apprehension, support a finding that Marinez anticipated apprehension on the sexual assault charges. Marinez contends that other facts negate a connection between Marinez's flight and consciousness of guilt: Marinez was stopped for expired license plates, not the charges in this case; and, Marinez asserts, if he had anticipated apprehension on the charges in this case, he would have fled earlier rather than remaining in the area. Marinez contends that the evidence therefore establishes that he did not run from the police based on the charges in this case. However, while this is one inference that may be drawn from the evidence, it is not the only inference that the evidence allows. Marinez was free to argue his interpretation of the evidence at trial, which he did. *See Miller*, 231 Wis. 2d at 460-61, 605 N.W.2d 567. The fact that Marinez disagreed with the circuit court's interpretation of the evidence does not persuade us that the court erroneously exercised its

discretion in determining that the evidence was probative of Marinez's consciousness of guilt.

Next, Marinez contends that the circuit court erroneously exercised its discretion in admitting the flight evidence because that evidence was unduly prejudicial. He contends that the purpose of the flight evidence was to inflame the jury by establishing that Marinez is a reckless, dangerous individual. He also cites Miller, for the proposition that the flight evidence was inadmissible because he could not explain his independent reason for flight to the jury without causing undue prejudice. *See id*. at 460, 605 N.W.2d 567 ("Evidence of flight is inadmissible where there is 'an independent reason for flight known by the court which cannot be explained to the jury because of its prejudicial effect upon the defendant.' " (citation omitted)). Marinez argues that his explanation for his flight-that he was afraid of arrest for other warrants he believed he had for an unpaid traffic ticket-resulted in undue prejudice. He contends this is highlighted by the State's use of the flight evidence in closing argument to contend that, if Marinez fled from police to avoid arrest for an unpaid traffic ticket, he would go to great lengths to avoid conviction in this case. Again, we disagree with Marinez's assertion that this establishes that the circuit court erroneously exercised its discretion in admitting the evidence. The circuit court weighed the prejudicial effect of the evidence against its probative value and determined that the evidence was not unduly prejudicial. This was a proper exercise of the circuit court's discretion, and we have no basis to disturb it on appeal. Accordingly, we affirm.

*Marinez*, 2010 WI App 159, ¶¶ 14-17.

The admissibility of evidence is generally a matter of state law. *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994). To the extent that Marinez's claim arises under state law, the respondent correctly points out that he is not entitled to review under the federal habeas corpus statutes. The Supreme Court has recognized that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Marinez makes no meaningful effort to show that the trial court's evidentiary ruling runs afoul of federal precedent. Regardless, while the admissibility of defendant's flight might be a close question, the trial court's exercise of discretion in admitting it is not so clear and convincing an error, much less violative of a clearly established federal law, that it would be subject to reversal on habeas corpus review.

### B. Ineffective Assistance of Counsel at Trial

Marinez also contends that he was denied effective assistance of counsel at trial because his attorney did not argue that his brother was responsible for committing the sexual assaults. Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both a constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Marinez's ineffective-assistance claim regarding this issue was raised in defendant's post-conviction motion and adjudicated on the merits by the circuit court, which found that defense counsel's chosen trial strategy was reasonable and, therefore,

not deficient. The Wisconsin Court of Appeals agreed and affirmed that result, finding no violation of the *Strickland* standard.

Marinez contends that he was denied the effective assistance of counsel at trial because his attorney did not present the defense theory that the five-year-old victim had contracted chlamydia from Alexander rather than from Marinez. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984) (defendant is denied his right to the effective assistance of counsel at trial if counsel's performance is deficient and counsel's deficiency prejudices the defendant). He asserts that trial counsel's defense theory — that the children had not been sexually assaulted at all — was unreasonable in light of the physical evidence that the five-year-old victim had contracted chlamydia. Marinez contends that, because his trial counsel pursued an untenable defense, counsel's performance was necessarily deficient. He contends that he was prejudiced by counsel's omission because it was vital to his defense to present an alternative theory of how the five-year-old contracted chlamydia, and the failure to present any alternative theory directly led to his conviction. The State responds that trial counsel's performance was not ineffective because of the absence of evidence that Alexander had chlamydia. The State contends that because the five-year-old victim had alleged only hand-to-genital contact by Alexander, it would have been unreasonable to assert that Alexander was the source of her infection.[2] The State also asserts that trial counsel reasonably declined to pursue a strategy of arguing that the victims truthfully reported that Alexander assaulted them yet falsely reported that Marinez assaulted them.

To establish that trial counsel's performance is constitutionally deficient, a defendant must show that counsel's conduct "'fell below an objective standard of reasonableness' considering all the circumstances." *State v. Carter*, 2010 WI 40, ¶ 22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted). Here, Marinez asserts that his trial counsel's performance was deficient for failing to establish an alternative theory as to how the five-year-old victim contracted chlamydia. He contends that counsel's performance was deficient for failing to introduce the existing evidence that Alexander may have been the source of the chlamydia or pursuing further evidence supporting that theory. There are two problems

---

[2] There was expert testimony at trial that the transmission of chlamydia requires genital-to-genital or genital-to-oral contact.

with this argument. First, the record does not reveal any significant evidence supporting a finding that Alexander had chlamydia. The only possible evidence on this point that Marinez identifies is: (1) Alexander lived in the Marinez household during the time of the sexual assaults alleged in this case; (2) Alexander was also charged with sexually assaulting the children during that time period; (3) Marinez believed that it was likely Alexander had been sexually assaulting the children; and (4) Alexander had been prescribed antibiotics for a purported cyst infection, which would have also treated a chlamydia infection, if it existed. Thus, there was no direct or persuasive evidence that Alexander had chlamydia. Second, even if this evidence would have supported a finding that Alexander was a possible alternative source of the victim's chlamydia infection, or if further research would have revealed additional evidence supporting that theory, we do not agree with Marinez that such a strategy would have been more reasonable than the one counsel pursued at trial. We agree with Marinez that his trial counsel's defense strategy was not perfect in that it did not explain how the victim contracted chlamydia. However, this does not lead to the conclusion, as Marinez asserts, that it would have been more reasonable to advance the defense theory that Alexander had sexually assaulted the children.

Had trial counsel pursued the defense theory that Alexander was the source of the victim's chlamydia infection, the defense would have had to argue that the children's allegations of abuse against their uncle, Alexander, were truthful, while similar, simultaneous allegations against their father, Marinez, were fabricated. Like the defense pursued at trial, this theory is obviously flawed, particularly because part of the State's case was that each of the children had the ability to distinguish between the truth and lying, and the defense has never asserted any motive for the children to fabricate the allegations against Marinez. Additionally, a defense theory that Alexander had sexually assaulted the children and infected the victim with chlamydia would not have necessarily established that Marinez did not also assault the children, particularly when the children's allegations against their uncle and father overlapped. We conclude that, while counsel's defense strategy at trial was not ideal, it was not less reasonable than the strategy that Marinez claims counsel should have pursued.[3] Thus, we are

---

[3] While Marinez asserts that the chlamydia evidence was the core evidence in the State's case, we note that the State specifically argued that "the primary source of evidence . . . in this case is the testimony of the three children." The State then contended that the

> not persuaded by Marinez's argument that counsel's performance was deficient.

*Marinez*, 2010 WI App 159, ¶¶ 9-11 (footnotes [renumbered] in original).

After concluding that Marinez failed to establish deficient performance, the court of appeals concluded further that Marinez suffered no actual prejudice from his counsel's alleged shortcomings:

> Moreover, even if we were to conclude that counsel's performance was deficient, we would conclude that the deficiency did not prejudice Marinez's defense. To establish prejudice, "[i]t is not sufficient for the defendant to show that his counsel's errors 'had some conceivable effect on the outcome of the proceeding.' Rather, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Carter*, 324 Wis. 2d 640, ¶ 37, 782 N.W.2d 695 (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. We conclude that Marinez is unable to make that showing here.
>
> The State's evidence at trial, aside from the chlamydia evidence, included the following: (1) consistent and detailed statements by all three of the minor victims that Marinez had repeatedly sexually assaulted them, either through trial testimony, recorded interviews, or both; (2) testimony by each child that he or she understood the difference between the truth and lying; (3) testimony by police that, on the night of his arrest, Marinez led police on a high-speed car chase and then fled on foot, and was apprehended with deep cuts in his abdomen that he claimed resulted from his running into a barbed-wire fence; and (4) testimony by a medical expert that Marinez's abdominal injuries were consistent with stab wounds rather than injuries from a barbed-wire fence. In light of this evidence, our confidence in the jury verdict is not undermined by any deficient performance by counsel in failing to argue an alternative source of the victim's chlamydia infection.

---

chlamydia evidence also provided physical evidence of the abuse, classifying the chlamydia evidence as "other evidence . . . that further shows [Marinez's] guilt."

*Marinez*, 2010 WI App 159, ¶¶ 9-13.

As reflected above, the state court accurately characterized Marinez's claim and identified the correct Supreme Court precedent controlling his allegation of ineffective assistance. Thus, the central question here is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable — a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)). In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* (citing *Youngblood v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, the standard is "doubly deferential" on habeas corpus review. *Id.*; *see also Richter*, 131 S. Ct. at 788 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted).

Marinez disagrees with the state court's determination, insisting that his defense counsel's strategy was unlikely to succeed. Marinez does not demonstrate, however, that the state court's decision was unreasonable under the circumstances, nor that counsel's strategy was so ill chosen that it rendered his trial unfair. Moreover, in view of the detailed testimony of his own children against both Marinez and his brother Alexander, Marinez is unable to establish that he was prejudiced as the result of this strategic decision by his counsel.

Because Marinez does not otherwise show that the Wisconsin Court of Appeals' decision was objectively unreasonable, that decision is entitled to deference. Therefore, Marinez is not entitled to relief under 28 U.S.C. § 2254 on this claim.

## II.   Procedural Default

In his third ground for relief, Marinez argues that his counsel was ineffective because he was unprepared for trial. The record confirms that Marinez did not raise this claim in state court. Marinez concedes as much. (Dkt. # 23, at 16.) Respondent argues, therefore, that this claim is unexhausted and barred from federal review by the doctrine of procedural default.

A petitioner is required to present his federal claims to the state courts in accordance with the state's procedural requirements so that the state courts have a meaningful opportunity to correct any mistakes. *See Martin v. Evans*, 384 F.3d 848, 854 (7th Cir. 2004); *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001). If the petitioner misses the opportunity to present a claim properly to the state courts, then federal review of the claim is forfeited. *See Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007). A procedural default precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was not fairly presented to the state courts and the opportunity to raise that claim now has passed; *or* (2) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991) (emphasis added).

A habeas petitioner may overcome procedural default by demonstrating cause for the default *and* actual prejudice by showing the court's failure to consider the claim would result in a fundamental miscarriage of justice. *See id*. at 750. Unfortunately for Marinez, he makes no attempt to demonstrate either, nor does the record disclose either.

Instead, Marinez argues that it would be "a travesty of justice if this issue were to be labeled ineligible for federal habeas relief because of a procedural default." (Dkt. # 23, at 16.). However, the fundamental-miscarriage-of-justice exception applies only where a petitioner supplements a constitutional claim with a colorable showing of factual, as opposed to legal, innocence. *See McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (quoting *Kuhlman v. Wilson*, 477 U.S. 436, 454 (1986)); *see also Murray v. Carrier*, 477 U.S. 478 (1986) (recognizing a narrow exception to the cause-and-prejudice requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense). Under this exception, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 319-22 (1995)). Marinez neither attempts to make, nor could he make, this showing on the basis of his arguments here. Accordingly, Marinez's ineffective-assistance claim concerning his trial counsel's lack of preparation is procedurally barred from review.

III.  **Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, the court concludes that petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists

16

would not otherwise debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED THAT:

1. The petition filed by Ricardo Marinez for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED and this case is DISMISSED with prejudice. The clerk of court is directed to enter judgment for respondent and close this case.

2. A certificate of appealability is DENIED. If petitioner wishes he may seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 24th day of December, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge